SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY v. W. O. WOODLEY ET AL.

Decided January 26, 1899.

1. **Pleading—Injury to Cattle Shipment in Transit.**

For petition in an action against a railway company for damages to a cattle shipment resulting from delay in transit held to sufficiently allege facts showing that the delay in transporting the cattle over the defendant's railroad, the initial line, was the cause of alleged delay on the other lines over which the shipment was made and to sufficiently allege the damages to the cattle by the delay on such line, see the opinion.

2. **Evidence—Conclusion of Witness.**

The statement of a witness that a delay of the cattle train on defendant's line of railway was the cause, through connections being thus missed, of subsequent delays on the connecting lines, is inadmissible, as being a conclusion.

3. **Same—Best Evidence—Writing and Parol.**

A statement by a consignor that he shipped cattle with the privilege of putting them on the market at an intermediate point, is inadmissible, as not being the best evidence, where it appears that the contract under which the shipment was made was in writing.

4. **Charge of Court Ignoring Defensive Matter.**

Where plaintiff claimed damages against a carrier for injuries to cattle in transit resulting from delays, and there was evidence that the cattle were voluntarily detained at some of the points en route by plaintiff's agent, a charge fixing the liability of the carrier for delay without reference to the issue as to plaintiff's agency in causing it, was material error.

APPEAL from De Witt. Tried below before Hon. JAMES C. WILSON.

*Proctors,* for appellant.

PLEASANTS, ASSOCIATE JUSTICE.—This appeal is submitted to us on brief of appellant only.

Appellees sued appellant in the District Court of De Witt County for damages to a cattle shipment. The damages were laid at $4553.59, with interest from May 27, 1895. Upon trial of the cause a verdict was rendered for the plaintiffs on the 31st of December, 1897, awarding them damages in the sum of $1800, and judgment was on same day rendered in accordance with the verdict; and new trial being denied it, appellant appeals to this court. The allegations of the petition, and the exceptions and pleas filed by appellant in answer thereto, together with the rulings of the court upon the exceptions, are thus stated by appellant in its brief:

"That on the 20th day of May, 1895, and continuously thereafter, until this date, said defendant company, so incorporated as aforesaid, owned and operated a line of railway through the counties of De Witt, Lavaca, Bexar, Wilson, Karnes, Fayette, Lee, Milam, and McLennan, in Texas, using and operating said railroads as common carriers of freight, passengers, and of live stock, for hire, and operating trains of railway cars over said roadbed in transportation of such freight, passengers, and live stock; that the said defendant company on the day and date last above mentioned, by itself and with other lines of railway, that is to say, the Gulf, Colorado & Santa Fe Railway in Texas, and the Atchison, Topeka & Santa Fe Railway, and the Gulf, Colorado & California Railway, beyond this State, partners of said defendant, was engaged in the transportation of and conveyance of live stock from points in Texas to markets in other States, viz., Chicago, in the State of Illinois, and Kansas City, in Missouri; and that said Gulf, Colorado & Santa Fe, Atchison, Topeka & Santa Fe Railway, and Gulf, Colorado & California Railways were agents of the said San Antonio & Aransas Pass Railway in the transportation of all live stock by them received from the Aransas Pass and conveyed to market in May and June, 1895, to points beyond this State. And that the San Antonio & Aransas Pass Railway, by itself, was in said months of May and June, 1895, engaged in the transportation of live stock for hire from points on its line in the State of Texas, to Kansas City, in Missouri, and Chicago, in Illinois.

"That on or about the said 20th of May, 1895, that is to say, on the 24th day of May, 1895, the plaintiffs, Woodley and Tucker, were the joint owners of 283 head of good fat cattle, in marketable condition; that the said cattle were at the time at Sweet Home, in Lavaca County, Texas; that on the said 24th day of May, 1895, these plaintiffs, as owners of said cattle, delivered to the said defendant, the San Antonio & Aransas Pass Railway Company, the said 283 head of cattle, to be by them transported and delivered to plaintiffs' consignees in Chicago, Ill., with the privilege of stopping said cattle at Kansas City, in Missouri, and there disposing of them upon the market; promising and agreeing to pay defendant their regular tariff rate for such service; that the defendant company accepted the said cattle of plaintiff for transportation, and caused to be executed by these plaintiffs written contracts of carriage, evidencing their agreement in the premises; that the said written contracts of carriage were executed by these plaintiffs, under the authority of these plaintiffs, and that the said contracts are now in the hands of defendant company, and can not be produced by these plaintiffs herein, and they call upon said defendants to produce the said contracts in court, or secondary evidence of their contents will be given in the trial of this case; that under the said written contracts, the said defendant company accepted the said cattle of plaintiffs for transportation by them over their lines of railway, said cattle to be by them safely and expeditiously conveyed from Sweet Home, Texas, to

Chicago, Ill., within a reasonable time, and to be delivered by the said defendant to plaintiffs' consignees at Chicago, Ill., viz., to Fish, Tower & Doyle; the said cattle to be delivered at the Union Stock Yards there to the said consignees, in good condition and within a reasonable time. That by special provision of said contract, it was stipulated therein, in substance, that in the event the said cattle were to be carried over other lines of railway, then the defendant company were to deliver the said cattle with reasonable diligence, in good condition, to the connecting carriers at the station at the end of its (the defendant's) line of railway; that by another provision of said contract, it was stipulated that, before any suit should be brought for damages, notice of such claim for damages should be filed and presented within —— days; that the other provisions of said contract were and are each and all unreasonable and unlawful, and in nowise binding upon the plaintiffs; nor was or is the provision with reference to the notice of a claim for damages reasonable and binding upon these plaintiffs. That having so received said cattle for transportation at the town of Sweet Home, Texas, in the county of Lavaca, and placed said cattle upon its cars at that point, the said defendant company started them en route to their destination; but that they, in total disregard of the said written contracts and obligations with these plaintiffs, so carelessly, negligently, and indifferently conducted themselves in the premises, and in such utter disregard to these plaintiffs' rights so operated their railway trains, the trains on which said cattle were being conveyed, that they failed utterly, and utterly refused to transport the said cattle over their said line of railway with reasonable diligence and dispatch, and on the contrary held and detained the said cattle on their said line of railway, viz., near Moulton, in Lavaca County, Texas, and at Yoakum, in Lavaca County, Texas, for more than ten hours beyond the usual and ordinary time of passage over their said lines; that the said cattle were detained by the said defendant company on their line of railway, unnecessarily, for a length of time ordinarily sufficient in which to convey the same to their point of connection with their connecting carriers, to whom they subsequently delivered said cattle; that by reason of said detention, the said cattle were detained at Cleburne, Texas, and at Arkansas City and Kansas City, and between the point of defendant's connection and said place, for more than sixty hours beyond the usual and ordinary time of passage between said points; that by reason of said detention, it became necessary to remove said cattle from the cars and feed them three times en route to Chicago, Ill.; that the usual and ordinary number of removals of cattle from trains for the purpose of feeding, in complying with the statutes regulating the same on shipments over said route and distance, is one time; that therefore, by reason of said first detentions of defendant company, said two extra feeds and said two extra removals, great loss of time in shipment to market was occasioned; and these plaintiffs say that the said cattle, by reason of said unnecessary and negligent delays on their lines, were detained from fifty-two to seventy-two hours

beyond the usual and ordinary time of passage, and that all the detentions to the said cattle were caused by the negligence of the said defendant company, and in utter disregard of plaintiffs' rights; and plaintiffs further say that defendant did not deliver said cattle to their connecting carrier in good condition, and that by reason of their carelessness and negligence in detaining them on their own said lines, the connecting carriers of defendants, to whom the defendant delivered the said cattle, failed to and were unable to deliver the said cattle to plaintiffs' consignees, Fish, Tower & Doyle, at the Union Stock Yards, Chicago, Ill., in good condition, and within a reasonable time. That by reason of such negligence and carelessness and default of the said defendant company in so delaying said cattle, and at places and at times where food and water could not be given to them, the said cattle were greatly depreciated in weight and injured in condition for market, viz., to the extent of 20 per cent in weight, more than ordinarily occurs in shipment of cattle over said route, the said depreciation in weight amounting to 60,000 pounds. That in addition to loss in weight of said cattle they were greatly injured in appearance and other conditions for sale, they being drawn, bruised, and of a rough and ill appearance upon their delivery to plaintiffs' consignees, and their grade and class being lower than it would have been if such delays and injuries had not occurred; that furthermore, the market price of said cattle declined; that the said cattle should have arrived in Chicago on Tuesday, the 27th day of May, in time for that day's market, and that they did not arrive there until Thursday, the 29th, too late for the market of that day, and were sold on the 30th; and the said cattle should have been sold on the market on Tuesday, the 27th; that on that day the market price of said cattle, in the condition they should have been in, was $4.50 per 100 pounds, and that the market price on Thursday received for said cattle was $3.70 per 100 pounds. That the difference between said market prices for said cattle on the day they were delivered, and the day they should have been delivered was 80 cents per 100 pounds. That the said cattle weighed upon their delivery in Chicago 246,650 pounds; that they should have weighed upon arrival there 300,000 pounds. That by reason of the loss in weight of said cattle in the amount of 56,000 pounds these plaintiffs lost the sum of $2520, and that by reason of the decline in the market price, they (plaintiffs) lost the sum of $1923.20.

"They further say that they were forced to pay two extra feed charges for said cattle, viz., at Cleburne, Texas, and Kansas City, Mo., amounting respectively to $27.50 and $33, or an aggregate of $60.50. That said damages, occasioned by said loss in weight and decline of market, and the said feed charges, taken together, aggregate the sum of $4553.50; on which amount these plaintiffs are entitled to interest at the rate of 6 per cent from the 27th day of May to the date of judgment, and interest thereafter at the rate of 6 per cent. These plaintiffs say that all said damages and loss to them was occasioned by the negligence, indifference, and carelessness of the defendant in handling and transporta-

tion of said cattle while in their charge; that these plaintiffs have paid all charges to the defendant for the transportation of said cattle as they had agreed to do; they further say that on the 18th of July, 1895, they presented their claim of damages to the defendant, and that the defendant has refused and still refuses to make known to plaintiffs its determination thereon.

"Wherefore, they sue and pray for citation to defendants, and for judgment for their damages in the sum of $4553.50, with interest thereon from May 27, 1895, to the day of judgment, and interest thereafter on the entire amount at the rate of 6 per cent per annum, and for all costs of suit, and for equity and general relief."

To this petition appellant presented the following special demurrers:

"1. Said petition is duplicitous, in that it charges that four lines of railway transported said cattle, to wit, defendant's line, and the respective lines of the Gulf, Colorado & Santa Fe Railway, the Atchison, Topeka & Santa Fe, and the Gulf, Colorado & California Railway, and that these lines were in partnership with the defendant; and also charges that the last three named lines were agents of defendant, and also charges that said cattle were transported over defendant's line alone; and then expressly contradicts this last allegation.

"2. That said petition charges a partnership between the defendant and the Gulf, Colorado & Santa Fe Railway and the Atchison, Topeka & Santa Fe Railway, and the Gulf, Colorado & California Railway, and sets out no fact warranting such a legal conclusion.

"3. That all allegations of partnership and principal and agency in said petition alleged as existing between defendant and the said other carriers in said petition named are wholly irrelevant, because the petition shows that plaintiffs did not contract with the defendant under such status as partner or principal, but on the contrary contracted with defendant by special contract, wherein defendant limited its liability to its own line.

"4. That said petition shows that the shipment of said cattle was an interstate shipment, and that same was under written contract of shipment, and that in said contract defendant limited its liability to its own line, and expressly claims damage for delay at points on defendant's own line, to wit, at Moulton and Yoakum, and yet also claims damage for delay at points which the petition plainly charges were not on defendant's own line, to wit, at Cleburne, Texas, Arkansas City, and Kansas City, and therefore such damage at points off defendant's own line is expressly excluded by said special contract.

"5. That said petition charges that the provisions of said special contract were all unreasonable and not binding on plaintiff, and sets out no facts warranting such an untoward legal conclusion.

"6. That petition alleges that about sixty hours delay at Cleburne, Arkansas City, and Kansas City, points not on defendant's line, and extra feeds, etc., were due to delay for some ten hours on defendant's

own line, and alleges no facts supporting such an untoward fact or conclusion.

"7. That said petition, by no facts alleged, shows what portion of the damages alleged were due to the negligence of the defendant company, and fails to set out facts proximately connecting defendant's negligence with the damages alleged."

Appellant further pleaded the general denial, and the following special pleas:

First. A denial under oath of the partnership alleged in plaintiff's petition, this plea fully meeting every phase of partnership allegation.

Second. A plea founded on and setting up written contracts of shipment of said cattle, alleged to have been made between the parties, and to cover all terms and provisions of said shipment, and charged to be in existence, and to have been executed by authority of appellees; said plea alleging that by the terms of said contract appellant only undertook the transportation of said cattle from Sweet Home, Texas, to Cameron, Texas, and pleaded performance of its contract undertaking, and that all damage occurred after appellant's transportation of said cattle had ceased, and was occasioned by the negligence of the connecting carriers.

Third. A plea setting up "act of God," and also alleging that appellant reasonably performed its written contract to carry said cattle from Sweet Home to Cameron, Texas, under the circumstances attending said transportation, in that the only delay on defendant's line was caused by a violent windstorm, blowing a water car from a side track out on the main line, and a nighttime collision caused by the unexpected presence of said car on said track. The plea fully meets the requirements of a plea of "act of God," and reasonable diligence as to said water car, and accident, and transportation of said cattle between Sweet Home and Cameron, and delivery thereat.

Fourth. That no damages for expense of feeding and watering cattle were recoverable, because the written contract of shipment expressly provided that such feeding and watering should be wholly at appellee's expense.

Appellees filed no supplemental pleadings.

The court sustained appellant's first, second, third, and fifth special demurrers. This ruling eliminated from the petition all partnership and principal and agent phase of this case, attacked by the demurrers one, two, and three, and also eliminated from the petition all contention that the written contracts sued on were unreasonable in their terms.

The court overruled appellant's fourth, sixth, and seventh special demurrers, and appellant assigns as error the ruling upon each of said exceptions.

Without any amendment of the pleadings after the ruling upon the demurrers the case went to trial.

The first, second, and third assignments of error assail the action of the court in overruling the fourth, sixth, and seventh demurrers to the

petition. The majority of this court are of the opinion that no one of these assignments is well taken; the petition, in their opinion, being sufficient and not obnoxious to special exception. But the writer does not concur in this opinion. In his opinion, the petition was defective in not alleging facts tending to show that the delay in transporting the cattle over appellant's road was the cause of the delays alleged to have occurred on the other lines of railway over which the shipment was made, and in not alleging the damage to the cattle by the delay on appellant's line; and for these defects the sixth and seventh special demurrers should have been sustained.

The fourth assignment of error is, in substance, that the court erred in refusing defendant's request, made at the proper time, to submit the case to the jury upon special issues made up and submitted under the direction of the court; and after overruling said request, further erred in submitting the case to the jury upon a general charge directing a general verdict. To determine whether this assignment is or is not well taken would require this court to construe and interpret article 1333 of the Revised Code of 1895; and the court declines to do this, inasmuch as the judgment will be reversed, and the cause remanded for errors pointed out by other assignments. The opinion of the writer is, that article 1333 of the Code of 1895 materially changes the statute on the same subject enacted in July, 1879, and is mandatory, when the request for a special verdict is made at the proper time and in the proper manner, and when the case will admit of such submission.

A special verdict necessarily requires the submission to the jury of special issues, and in any case in which it is practicable to adjudicate the rights of the parties upon a special verdict, if proper and sufficient issues are prepared by the party wishing a special verdict, and presented to the court with the request that they be submitted to the jury, with instructions to them to return a special verdict or finding upon each of the issues, the refusal of such request would be error. In this case it does not appear that special issues were prepared and presented to the court, along with his request for a special verdict, by counsel; and when this is not done, the court may in its discretion direct either a general or special verdict, as was the practice of the courts prior to the Act of 1895. I am therefore of the opinion that this assignment is not well taken.

The fifth assignment is, that the court erred in permitting in evidence, over objection of appellant, answer number 7 of the witness H. Y. Irvine, which answer is: "There were delays in the carriage of the cattle; the first delay occurred between Yoakum and Flatonia, Texas, at Moulton, Texas, on the San Antonio & Aransas Pass Railway. It occurred about 10 o'clock p. m., May 24, 1895. The cattle were delayed until 5 o'clock a. m., May 25, 1895. It was caused by a runaway watercar colliding with the engine on the cattle train we were on, causing a wreck. The next delay occurred at Temple, Texas. We were delayed one hour and twenty minutes on May 25, 1895, on the Santa Fe Railway. The delay was caused by our train having been thrown out of order

by the delay on the San Antonio & Aransas Pass Railway. The next delay occurred at Cleburne, Texas, May 25, 1895, at 8 o'clock p. m., on the Santa Fe Railway, from 8 p. m., the 25th, until 4 a. m., 26th. The railway authorities unloaded the cattle against my instructions, saying that they had been loaded as long as they could be allowed to remain without unloading them to be fed, watered, and allowed to rest. The original delay was the cause of the one at this place. The next delay occurred at Arkansas City, Kan., on the Santa Fe Railway, from 9 p. m., May 26, 1895, until about 3 o'clock p. m., May 27, 1895. The first delay on the San Antonio & Aransas Pass Railway had thrown the cattle so far behind time that we could not get to Kansas City in time for Monday's (27th) market. I preferred to lay over in Arkansas City, Kan., to laying over at the yards in Kansas City. I had shipped the cattle with the privilege of putting the cattle on the Kansas City market or shipping them through to Chicago."

We are of the opinion that none of this answer save so much of it as relates to the delays on appellee's line of railway, and the delays on the other lines of railway over which the shipment was made, should have been admitted in evidence; and the statement of the witness that the first delay caused all the other delays, and also his statement that he had shipped the cattle with the privilege of putting them on the market at Kansas City, should have been excluded. The last of these statements was objected to as not being the best evidence of what the witness' privileges under the contract were. Since the petition showed that the contract was in writing, this objection should have been sustained. The other statements were objected to as being conclusions of the witness, and this objection should have been sustained.

The sixth assignment of error assails the action of the court in permitting the plaintiff to introduce in evidence the answer of this same witness to direct interrogatory 7a, the objection being, among others, that the answer was but the conclusion of the witness. The answer in substance is, that the delay on the defendant's road deranged the plans of the Santa Fe, and caused the train by which the cattle were shipped to miss connections all the way through, and necessitated the detention of said train while other trains were being made up. We think this statement is but a conclusion of the witness, and not the statement of a fact, and should have been excluded.

The seventh and eighth assignments assail the action of the court in permitting the testimony of the witness Irvine and the witness Clemens as to the condition of the cars in which the cattle were shipped. Among other objections to this evidence was, that it was not warranted by any allegations in the petition. This objection should have been sustained and the testimony excluded.

The second paragraph of the main charge of the court is the subject of appellant's twelfth assignment of error. Said paragraph is as follows: "If you believe from the evidence that the defendant, the San Antonio & Aransas Pass Railway Company, in transporting the cattle of plaintiffs

over its line of railroad, from Sweet Home, Texas, to Cameron, Texas, by its negligence caused the unreasonable delay of said cattle while en route to Chicago, and that the defendant could, by the exercise of ordinary care, have avoided such delay of said cattle, then you will find for the plaintiffs, and you will assess their damages, if any, at such sum as you may find they are entitled to receive; in determining such damages, you will find at what time said cattle should have arrived at Chicago by the exercise of ordinary care and diligence on the part of the defendant, and also what was the market value of cattle at Chicago at such time, if they had arrived in good condition; you will then find what day plaintiffs' cattle actually arrived at Chicago, and whether or not said cattle were injured in weight and condition by reason of such delay, if any, so as to impair their market value; and you will further find what was the market value of said cattle at Chicago in the condition in which they did so arrive in at Chicago, provided you find from the evidence that such condition of said cattle was due to delays caused by the negligence of the defendant; if you so believe from the evidence, you will find for plaintiffs such sum as you may find to be the difference, if any, between the market value at Chicago of said cattle at the time of their arrival at Chicago, in the condition they were when they so arrived, and the market value of said cattle at Chicago at the time you may find said cattle should, in the exercise of ordinary diligence, have arrived at Chicago, in good condition. You will further find whether or not any additional expense was occasioned plaintiff by reason of delays in said cattle arriving at Chicago and negligence of defendant, the San Antonio & Aransas Pass Railway Company; and if you so believe, you will find for plaintiffs the amount of such additional expense, provided you find that such expense would not have been incurred by plaintiffs but for the negligence of the defendant, the San Antonio & Aransas Pass Railway Company. But you can not find for a greater sum than is claimed by plaintiffs in their petition."

One of the objections urged to this charge is, that it gives an erroneous measure of damages, in this, that it permits a recovery for damages which may have resulted by the voluntary detention of the cattle by plaintiffs' agent at Arkansas City and at Kansas City; and this objection is in our opinion a valid one, and the assignment is sustained.

The nineteenth assignment is that the verdict is excessive. This assignment is, we think, well taken. The only evidence as to the amount of damage to the cattle caused by the delays is the testimony of expert Hall, witness for appellees. He estimates the injury to the cattle by reason of the delay between Yoakum and Cameron to be 5 per cent. This estimate in connection with the weight of the animals, and their market value as shown by the evidence offered by plaintiffs, makes it manifest, we think, that the verdict for $1800 is excessive.

For the reasons indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*